On the twenty-ninth of October the plaintiffs agreed to sell goods to Benedict Co., and to take in payment the note of Leggett Brothers, the defendants. No other time being specified, the delivery of the goods and the delivery of the note were to be simultaneous, and either party had a right to call on the other to perform immediately. The goods were delivered on the same day, but, for some cause not explained, the note, which was to be accepted in payment, was not asked for at the time, and was not delivered. About three days afterwards the note was tendered, and was refused in consequence of a rumor which the plaintiffs had heard after the sale affecting the solvency of the makers. A day or two still later the makers failed. Both parties to the contract, so far as appears, had equal knowledge of the circumstances of the makers of the *Page 589 
note, and neither had any suspicion that they were not a solvent firm.
If the note had been delivered at the same time with the goods, as the plaintiffs had a right to require, the transaction would belong to a very ordinary class of dealings, in which a commodity is exchanged for the note or obligation of some person other than the purchaser. In such a case, there being no fraud or concealment on the part of the purchaser, the seller takes all the risk of the goodness of the note. If the maker afterwards becomes insolvent, or if it subsequently appear that he was insolvent at the time of the sale, it is nevertheless true that the seller has received for his goods precisely the article he bargained for, and he therefore cannot demand payment over again in any other manner. In the present case the note was not delivered, but that difference in circumstance does not change the principles of the dealing. The goods were delivered without qualification, so that not only did the title pass, but the vendor's lien for the price in cases of sale for present payment was not retained. The simple result of the transaction was that the purchasers became indebted for the price, the debt being payable immediately, or whenever requested, but payable only in the note of Leggett Brothers according to the terms of the agreement. Their liability to the vendors was the same as though they had given their own note for the goods, payable in the obligations of Leggett Brothers on demand. They had purchased the goods to be paid for in that manner, and, until they should make default in so paying, no circumstances existing in this case could place them under obligation to pay in any other manner. To hold that they must pay in money in consequence of the insolvency of Leggett Brothers, whether existing at the time of the sale or occurring afterwards, would be merely making for them a new contract which cannot be done. *Page 590 
Where goods are sold in this manner, the seller, supposing that the third parties, in whose obligations he has received or has agreed to receive the price, are solvent, and after delivery it is discovered that those parties were insolvent at the time, the sale being in all respects a fair one, a question might arise whether a court of equity could be appealed to for the purpose of rescinding the contract on the ground that it was entered into and performed, on his part, under a mistake of fact. That question need not be examined in the present case. The plaintiffs have never in any manner suggested a rescission of the contract. When they refused the note tendered to them they did not claim their goods. They afterwards, as the case shows, requested payment in another manner, that is, in the notes of the purchasers. That was an affirmation of the sale. They waited about a year without calling in question the validity of the sale, and then they more conclusively confirmed it by bringing this suit upon the note which had been tendered to them in payment.
From what has been said it follows that the purchasers of the goods rightfully tendered to the plaintiffs in payment therefor the note of Leggett Brothers, and the material question now to be examined is whether such tender, notwithstanding the refusal, vested in the plaintiffs a title to the note, so that they can maintain the action upon it.
The effect of a tender, in such cases, upon the contract, upon the title to the thing tendered, and upon the subsequent relations of the parties, has been the subject of considerable discussion in the courts and of some conflict of opinion. In the Supreme Court of New Hampshire it has been held, upon the most elaborate consideration, that an unaccepted tender of specific articles, upon a contract payable in such articles, does not vest a title in the creditor. (Weld v. Hadley, 1 N. Hamp., 295.) In the same case it was also held that the tender, made according to the contract in all the circumstances of time, place, c., absolutely and forever discharged the obligation, so that the debtor *Page 591 
might use or dispose of the goods tendered as his own and without accountability.
It is very generally agreed that the tender in such cases, if properly made, discharges the contract. The decision in New Hampshire, as we have seen, affirms this doctrine, and it would seem to be clear in principle. A debtor bound to deliver specific articles has done all in his power when he has tendered them at the time and place required by the contract. If the other party is not there to receive them, or if he refuses to accept them, the fault is not in the one who makes the tender. Having done precisely what he agreed to do the law imposes on him no further duty or obligation. He may, therefore, abandon the goods if he chooses so to do, and he is not bound to be at the expense and trouble of keeping them any longer. If, however, he chooses to keep them, he voluntarily assumes a new and different obligation, of which I shall presently speak.
But while the decision referred to stands upon unquestionable ground, so far as a discharge of the contract is concerned, there is, I think, no other case holding that a good tender of chattels or specific things due upon a contract does not vest the title in the creditor, although such tender is not accepted. Chancellor KENT (2 Com., 509) says: "This [the case of Weld v. Hadley] was contrary to the doctrine declared in other cases; and the weight of argument if not of authority, and the analogies of the law, would appear to lead to the conclusion that on a valid tender of specific articles the debtor is not only discharged from his contract, but the right of property in the articles tendered passes to the creditor." The adjudged cases go very far to sustain the doctrine thus laid down if they do not absolutely settle it. (Rix v. Strong, 1 Root, 55; Smith v. Loomis,
7 Conn., 110; Curtis v. Greenbanks, 24 Verm., 536; Tin
v. Rawley, 4 Barr., 169; Case v. Green, 5 Watts., 262;Coit v. Houston, 3 John. C., 243; Slingerland v. Morse,
8 John., *Page 592 
474; Lamb v. Lathrop, 13 Wend., 95; 2 Greenl. Ev., § 610,Parsons on Contracts, 164, 165.) A rule which has been sanctioned on so many occasions and by so many courts ought to be followed, unless it can clearly be shown to be unsound in principle or inconvenient in practice.
If the question were a new one, I should incline to follow the doctrine deducible from the cases which I have referred to. As before observed, the debtor who has contracted to deliver specific articles in payment of his debt, and who makes a valid tender, has done all in his power to perform his engagement. If the transaction is incomplete in consequence of the creditor's neglect or refusal to receive the articles, this is not the debtor's fault. As to him there is a full performance, and he ought not to be burdened with the contract any longer. To say that he must abandon the articles in order to enable himself at all times to insist that he is freed from the obligation of the contract, is to expose not only the property to waste or destruction, but the debtor to consequences of needless severity, if he happen to have made an insufficient tender, and to have judged erroneously on that point. In that event he remains liable on his contract, while his property may become lost to him. If we say that he must not abandon the articles, but must keep them in readiness whenever called upon to deliver them on the contract, then we merely assert in another form that the agreement is still in force against him, and that he remains indefinitely subject to its obligation, although he has once fully performed it if the tender was good. These results are avoided if we hold that on a valid tender being made the title is changed and the law applies the property in complete satisfaction of the debt. Then the debtor may abandon, if he elects so to do and to incur the hazard. If he does not so elect, but continues in possession, then he voluntarily assumes a new relation, that of bailee and trustee for the creditor, who has become the owner. That relation henceforth becomes the rule and the measure of *Page 593 
his responsibility. If the property is burned or lost, or perishes on his hands without his gross neglect, the loss will fall where in justice it ought to fall, on the creditor who is in fault. If he consumes it, or disposes of it to avoid the expense or inconvenience of its preservation, the contract does not thereby spring into a new existence, but he is responsible to the owner on the principles which govern the new relation he has assumed.
Looking, on the other hand, to the rights of the creditor, if he erroneously rejects the tender, and the articles are abandoned, he loses, indeed, his remedy in the contract, and he incurs the hazard of losing the property also. This result cannot be avoided, and the rights of the debtor who is not in fault at the same time be preserved. But the debtor himself will rarely assume the hazard of abandoning the property, because he can, with safety to himself, keep it in the character which the law imputes to him, of bailee or trustee. According to the NewHampshire case (supra), that relation does not arise, and the debtor can keep or dispose of the goods as his own. But while this is unjust to the creditor, it does more than justice to the debtor. The debtor should certainly be no worse off because the other party has refused a tender properly made, but there is neither reason nor equity in saying that he is in a better condition than he would be if his tender had been accepted. It is unjust to the creditor, because, if he has judged erroneously in regard to the tender, he has not only lost his debt, but the property also which the law adjudges has satisfied such debt. Now, the question whether a tender has been well made in all the circumstances of time and place, of manner, quantity and quality, is often one difficult of determination even by the courts. If, therefore, a party misjudges in any of these particulars, the consequences to him should not be more serious than the rights of the other party necessarily require. His error should impose no burden, not even the slightest, on the person who is not in *Page 594 
fault, but, on the other hand, it should not yield to him a positive benefit.
It is a suggestion not destitute of plausibility that the creditor in refusing the tender rejects the title which is offered to him, and therefore that it must of necessity remain in the original owner. But this is placing upon his conduct a construction somewhat too literal and exact. In such cases the circumstances of the tender, as before observed, are generally open to question and dispute. The creditor, therefore, in refusing to accept it, simply alleges, in substance, that it is defective in some of the particulars required by the contract. This allegation he can only make effectually by the act of refusing. The law will therefore qualify the act by considering it subject to the result of an inquiry into the validity of the tender, and will not impute it to him as an absolute and unqualified rejection of the title if the tender be adjudged valid. Looking through forms to substance, the controversy in all such cases is essentially this: The debtor alleges that the contract is performed, the debt satisfied and the title to the things tendered changed to the creditor. The creditor denies the truth of these allegations. The party against whom they are found is the legal owner. If found against the debtor, he must pay the debt in money, but he has not lost his goods. If found against the creditor, his debt is paid, but the property is his.
From the principles which have been stated it follows that the plaintiffs became the owners of the note in suit when it was tendered to them in payment of the goods. Sometime after the tender and refusal, the purchasers of the goods made a qualified sale of the note to one William H. Leggett. But W.H. Leggett had full notice of the facts which, as we have seen, vested the title in the plaintiffs, and, moreover, the sale to him was made subject to their rights. The proof being direct and positive that the note, after it became the property of the plaintiffs by the tender, *Page 595 
was destroyed by fire, they are entitled to recover upon it, and the judgment must be affirmed.
All the judges concurred in the opinion delivered by STRONG, J. All concurred in the other opinions, except, first, that DENIO, J., dissented from the application to the case, where the thing tendered is a promissory note, of the doctrine in which he concurred in relation to a chattel; and STRONG, J., expressed doubt on the same ground; second, that SELDEN, ROOSEVELT, HARRIS and PRATT, Js., qualified their concurrence in the opinions delivered by JOHNSON, Ch. J., and COMSTOCK, J., holding that the party making the tender may, if he thinks proper, acquiesce in its refusal by the other party, and thereafter treat the property as his own, remaining liable, not as bailee but upon the original contract.
Judgment affirmed.